# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION AT LAFAYETTE

| | | |
|---|---|---|
| INDIANA RIGHT TO LIFE, INC. and | ) | |
| ARLINE SPRAU, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:04-CV-0071 |
| | ) | |
| RANDALL T. SHEPARD, JAMES O. MCDONALD, | ) | |
| JUDY JOHNS JACKSON, DONALD W. WARD, | ) | |
| PAYTON WELLS, JOHN O. FEIGHNER, and | ) | |
| ELIZABETH PERALTA, in their official capacities | ) | |
| as members of the Indiana Commission on Judicial | ) | |
| Qualfications, and FRED AUSTERMAN, DIANE L. | ) | |
| BENDER, JANET L. BIDDLE, CORINNE R. | ) | |
| FINNERTY, ROBERT L. LEWIS, R. ANTHONY | ) | |
| PRATHER, J.MARK ROBINSON, ANTHONY | ) | |
| ZAPPIA, and SALLY FRANKLIN ZWEIG, in their | ) | |
| official capacities as members of the Indiana | ) | |
| Disciplinary Commission, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM , OPINION AND ORDER

This matter is before the Court on the Motion for Summary Judgment (Docket No. 67) filed by Plaintiffs Indiana Right to Life, Inc. and Arline Sprau.  The Court also considers Defendants' Motion to Dismiss (Docket No. 36)[1] and Motion for Summary Judgment (Docket No. 94).  The Court heard oral argument in Lafayette, Indiana on July 21, 2006, and the issues have been fully briefed.  For the reasons set forth below, the Plaintiffs' Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part,

---

[1]This Motion was converted to a Motion for Summary Judgment as provided by Rule 12(b) of the Federal Rules of Civil Procedure, and the parties were given additional time to submit relevant materials (Docket No. 84).  Therefore, the Court will consider that Motion as part of the Defendants' Motion for Summary Judgment (Docket No. 94).

and the Defendants' Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part.

I.     Introduction

On September 29, 2004, Plaintiffs, Indiana Right to Life, Inc., Arline Sprau, and Mary P. Hall,[2] filed a Complaint for Declaratory and Injunctive Relief against members of the Indiana Commission on Judicial Qualifications and members of the Indiana Disciplinary Commission.  The Plaintiffs filed an Amended Complaint for Declaratory and Injunctive Relief on January 4, 2005, challenging the constitutionality of Indiana Canons of Judicial Conduct 3E(1) and 5A(3)(d)(i) and (ii).  Plaintiffs and Defendants filed motions for summary judgment, each claiming there is no genuine issue of material fact and that each is entitled to judgment as a matter of law.

II.     Standard of Review

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The moving party bears the burden of identifying those portions of "the pleadings,

_____

[2]Mary P. Hall was withdrawn as a Plaintiff on June 17, 2005.

2

depositions, answers to interrogatories, and admissions on file, together with the affidavits" that the moving party believes demonstrate an absence of genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once this burden is met, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988).

When parties file cross motions for summary judgment, each motion must be assessed independently, and denial of one does not necessitate the grant of the other. *M. Snower & Co. v. United States*, 140 F.2d 367, 369 (7th Cir. 1944). Rather, each motion evidences only that the movant believes it is entitled to judgment as a matter of law on the issues within its motion and that trial is the appropriate course of action if the court disagrees with that assessment. *Miller v. LeSea Broadcasting, Inc.*, 87 F.3d 224, 230 (7th Cir. 1996).

III.    Background and Facts

In 1973, the Indiana Supreme Court adopted a code of judicial conduct based on the American Bar Association's Model Code of Judicial Conduct. The provisions of two canons of that code are at issue here – Canon 3E(1) and Canon 5A(3)(d)(i) and (ii). Indiana Canon of Judicial Conduct 3E(1) requires judges to recuse themselves when a

3

"judge's impartiality might reasonably be questioned."  Indiana Canon of Judicial

Conduct 5A(3) states: "A candidate for judicial office" shall not "make pledges or

promises of conduct in office other than the faithful and impartial performance of the

duties of the office" or "make statements that commit or appear to commit the candidate

with respect to cases, controversies or issues that are likely to come before the court."

Ind. Code of Judicial Conduct, Canon 5A(3)(d)(i) and (ii).

　　　In February 2002, the Indiana Commission on Judicial Qualifications sent a memo

to all judicial candidates for that year's elections stating that they may not make

statements which appear to commit them to the outcome of cases, such as "tough on

crime platforms."  Second Affidavit of Margaret W. Babcock ("Babcock Affidavit"),

Exhibit B, ¶ 2.  On June 27, 2002, the United States Supreme Court issued its opinion in

*Republican Party of Minnesota v. White*, 536 U.S. 765 (2002), finding the so-called

"announce clause" in Minnesota's Canons of Judicial Conduct unconstitutional.

Announce clauses stated that judicial candidates shall not announce their views on

disputed legal or political issues.  *See Id*. at 769.  In 1990, the ABA amended the Model

Code and took out the announce clause, and in 1993, the Indiana Supreme Court amended

its Code to remove the announce clause.

　　　Following the *White* decision, the Commission issued Preliminary Advisory

Opinion #1-02 ("Advisory Opinion") to judicial candidates.  The Advisory Opinion

indicates that the Commission is "amending its advice about certain campaign speech

where the prior limitations would not be enforceable under *White*."  Amended Complaint,

Ex. D at 2.  The Advisory Opinion states that Indiana eliminated the announce clause

4

from Canon 5 in 1993, and judicial candidates are constitutionally permitted to state their general views about disputed social and legal issues.  The Advisory Opinion further stated, however, that "broad statements relating to the candidate's position on disputed social and legal issues, . . . incurs the risk of violating the 'commitment' clause and/or the 'promises' clause."  Amended Complaint, Ex. D at 4.  The Advisory Opinion outlined several examples of permissible speech – such as "criticizing an opponent's qualifications, record, or past decisions, so long as the criticism is based on objective facts," or making promises relating to court administration – but declined to provide a "list of approved and disapproved statements."  Amended Complaint, Ex. D at 2.  Such a list was improper, according to the Advisory Opinion, because "the propriety of more particularized statements is too dependent upon context and facts to allow the Commission's prejudgment in most instances.  Instead, many issues about campaign speech will require ad hoc analysis."  Amended Complaint, Ex. D at 3-4.  Judicial candidates were "encouraged to contact the Commission directly and in advance to discuss the propriety of the campaign statements, or to discuss the appropriateness of their opponents' statements and the proper responses to those statements."  Amended Complaint, Ex. D at 4.

In 2002, Plaintiff Indiana Right to Life, Inc.[3] sent questionnaires to judicial candidates of that year's elections.  Those questionnaires asked judicial candidates about

---

[3]Indiana Right to Life, Inc., a non-profit organization, describes itself as an "educational organization" that "seeks to collect and publish data regarding judicial candidates' political philosophy and stance on disputed legal and political issues."  Plaintiff's Memorandum in Opposition to Motion to Dismiss at 4.

disputed legal and political issues, such as abortion and assisted suicide.  Right to Life sent out questionnaires again in 2004.  Although most recipients of the questionnaire declined to respond to it, at least two recipients provided substantive answers.  Amended Complaint Exhibits E-24 through E-31; Defendants' Memorandum in Support of Motion for Summary Judgment at 3.  Some questionnaires indicated that the recipient declined to respond because of the Canons of Judicial Conduct or the advice of Margaret Babcock, counsel to the Commission.  Amended Complaint Exhibit E.

On September 29, 2004, Right to Life filed a Verified Complaint for Declaratory and Injunctive Relief against members of the Indiana Commission on Judicial Qualifications[4] in their official capacity and members of the Indiana Disciplinary Commission[5] in their official capacity.  On January 4, 2004, Right to Life filed an Amended Verified Complaint for relief challenging the "recusal clause" found in Canon 3E(1) and the "pledges and promises clause" and "commit clause" found in Canon 5A(3)(d)(i) and (ii).

More specifically, Right to Life claims that Canon 3E(1) violates the First Amendment of the United States Constitution as applied to the 2004 candidate questionnaire, insofar as it "can be applied to prevent judges who have exercised their right to speak on disputed legal and political issues from hearing cases that address the

---

[4]Indiana Supreme Court Chief Justice Randall T. Shepard (Chairperson), James O. McDonald, Judy Johns Jackson, Donald W. Ward, Payton Wells, John O. Feighner, and Elizabeth Peralta.

[5]Janet L. Biddle (Chairperson), Fred Austerman, Diane L. Bender, Corinne R. Finnerty, Robert L. Lewis, R. Anthony Prather, J. Mark Robinson, Anthony M. Zappia, and Sally Franklin Zweig.

issues on which they have spoken."  Amended Complaint at 3, ¶ 5.  Right to Life further

claims that the Commission's enforcement policy regarding Canon 3E(1) "is in violation

of the First Amendment, both on its face and as applied to the 2004 candidate

questionnaire."  Amended Complaint at 3, ¶ 5.  Right to Life also alleges that Canon

5A(3)(d)(i) and (ii) "chills judicial candidates' free speech in the overbreadth and

vagueness of its language, in its application to the 2004 candidate questionnaire, and in

the [Commission's] enforcement policy by prohibiting candidates from expressing their

views on legal and political issues, and thus, from responding to the 2004 candidate

questionnaire that seeks to ascertain the candidates' views on issues."  Amended

Complaint at 2-3, ¶ 3.

IV.    <u>Discussion</u>

A.    Standing

Defendants argue that Right to Life lacks standing to bring this action.  Article III,

§ 2 of the Constitution limits the jurisdiction of federal courts to actual "cases" or

"controversies."  *Raines v. Byrd*, 521 U.S. 811, 818 (1997).  To meet constitutional

standing requirements, Plaintiffs must prove: (1) injury in fact; (2) a causal connection

between the injury and the challenged act; and (3) a likelihood that the injury will be

redressed by a favorable decision.  *Friends of the Earth, Inc.*, *v. Laidlaw Env. Servs.*, 528

U.S. 167, 180-181 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).

An "injury in fact" is "an invasion of a legally protected interest" which is both

"concrete and particularized"[6] and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 528 U.S. at 560 (citations omitted).  In a suit challenging the legality of government action, when the plaintiff is himself an object of the action at issue "there is ordinarily little question that the action or inaction has caused him injury." *Id*. at 561-62.  However, "when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Id*. at 562.

In this case, Right to Life has demonstrated injury in fact.  Right to Life's purpose, as stated in its Amended Complaint, is twofold.  First, it seeks to gather information "to educate its members and other citizens about candidates for public office."  Amended Complaint at 5, ¶ 15.  Second, it seeks to publish that information to Plaintiff Arline Sprau and others.  Amended Complaint at 5, ¶¶ 15-16.  The restrictions of the challenged canons injure Right to Life's ability to perform both purposes, most importantly through its reluctance to publish the answers it received to its questionnaires for fear of causing the answering judges to be subject to discipline under the canons.  *See Meese v. Keene*, 481 U.S. 465, 473 (1987) (actual injury can exist when plaintiff is chilled from exercising her right to speak or declines to speak for fear of enforcement).

Defendants also argue that Plaintiffs lack standing because they fail to identify a "willing speaker."  Where a willing speaker exists, the First Amendment protects the right to receive speech. *Virginia State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425

---

[6]The Court in *Lujan* defined "particularized" as meaning "that the injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 561 n.1.

U.S. 748, 756 (1976). In this case, Right to Life has identified willing speakers. First, at least two judges provided substantive answers to the questionnaires, and thus have already spoken. Second, Right to Life wishes to publish the substantive responses it has already received to Plaintiff Arline Sprau and others. Therefore, Right to Life itself is a willing speaker, and Plaintiff Arline Sprau has a right to receive speech from Right to Life. *See Id*.

The injury to Plaintiffs is also redressable by this Court. Were the Plaintiffs to receive all of the relief they seek, they would be free to receive and distribute information contained in responses to their questionnaires without fear of subjecting the answering judges to discipline. Additionally, while it certainly would not compel a candidate to answer the questionnaire, granting relief to the Plaintiffs would eliminate the chilling effect on judicial responses, "thus remov[ing] any government-imposed barriers to [Plaintiffs'] right to receive candidate information." *Family Trust Foundation of Kentucky, Inc. v. Wolnitzek*, 345 F.Supp.2d 672, 687 (E.D. Ky. 2004).

Finally, the Plaintiffs in this case satisfy prudential standing requirements. In analyzing prudential standing, a court considers whether the "third-party plaintiff can show a close relationship between the first and third party and some obstacle to the first party's ability to protect his own interest." *Massey v. Wheeler*, 221 F.3d 1030, 1035 (7th Cir. 2000). In the context of First Amendment claims, however, the "Supreme Court has relaxed the requirement that the plaintiff show some obstacle to the first party's ability to bring his own claim" because "some parties who could challenge a statute on First Amendment grounds may choose to forgo litigation to avoid the risk of punishment or

9

retribution." *Id.* (citing *Secretary of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956 (1984)).  As an initial matter, the Court recognizes that Right to Life is seeking to protect its own First Amendment rights in pursuing this lawsuit and is not solely a "third-party" plaintiff seeking to vindicate the rights of others.  Furthermore, Right to Life is highly involved in judicial campaigns because of its desire and efforts to obtain information on the political and social views of judicial candidates.  That relationship is sufficiently close to satisfy prudential standing requirements.

> B.      Ripeness

"Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Nat'l Park Hospitality Ass'n v. Dept. of the Interior*, 538 U.S. 803, 807 (2003).  A case is ripe if a plaintiff "has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 687 (7th Cir. 1998) (citing *Babbit v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).  Critically, however, a "plaintiff who mounts a pre-enforcement challenge to a statute that he claims violates his freedom of speech need not show that the authorities have threatened to prosecute him; the threat is latent in the existence of the statute." *Wisconsin Right to Life, Inc. v. Schober*, 366 F.3d 485, 489 (7th Cir. 2004) (quoting *Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003)).  In *Babbit*, for example, the Court found that a credible threat of prosecution existed under a statute even though the penalty provision had never been

applied and the appellants argued that it may never be applied.  *Babbit*, 442 U.S. at 302.

The Court noted that "the State has not disavowed any intention of invoking the criminal

penalty provision."  *Id*.  As the Court of Appeals for the First Circuit has stated, "this

standard – encapsulated in the phrase 'credible threat of prosecution' – is quite

forgiving."  *New Hampshire Right to Life v. Gardner*, 99 F.3d 8, 14 (1st Cir. 1996).

Although there has been no explicit threat of prosecution through disciplinary

proceedings in this case, the threat of that prosecution is "latent" in the existence of

Canons 3E(1) and 5A(3)(d)(i) and (ii).  *See Id*.  Moreover, the Plaintiffs in this case have

alleged that speech has already been chilled by the existence of the canons at issue.  Other

courts deciding ripeness issues in similar contexts have noted that the "danger" involved

in pre-enforcement free speech challenges "is, in large measure, one of self-censorship."

*See Gardner*, 99 F.3d at 15 (quoting *Virginia v. American Booksellers Ass'n, Inc.*, 484

U.S. 383, 393 (1988)).  Self-censorship, as the Supreme Court stated in *American*

*Booksellers*, "is a harm that can be realized even without an actual prosecution."  *Id*; *see*

*also North Carolina Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 710 (4th Cir. 1999)

(presumption that statute restricting expressive activity creates credible threat of

prosecution "is particularly appropriate when the presence of a statute tends to chill the

exercise of First Amendment rights.") (citations omitted).

The language of the Advisory Opinion also creates a credible threat of prosecution.

It unambiguously states that "the Commission will continue to enforce the rules in Canon

5 requiring candidates . . . to not make pledges and promises of conduct in office, *Canon*

*5A(3)(d)(I)*, and to not make statements which commit or appear to commit the candidate

11

with respect to cases likely to come before the court.  *Canon 5A(3)(d)(ii)*."  Amended

Complaint, Ex. D at 2 (emphasis in original).   The Advisory Opinion further states that

"broad statements relating to the candidate's position on disputed social and legal issues, .

. . incurs the risk of violating the 'commitment' clause and/or the 'promises' clause."

Amended Complaint, Ex. D at 4.  While the Commission states that it is not currently

threatening discipline, it certainly has not "disavowed any intention" of doing so in the

future.  *See Babbit*, 442 U.S. at 302.  This case is ripe for adjudication.

C.    Abstention

Defendants also argue that this Court should decline to exercise its jurisdiction

under the doctrine of abstention.  "Abstention from the exercise of federal jurisdiction is

the exception, not the rule," and "is an extraordinary and narrow exception to the duty of

a District Court to adjudicate a controversy properly before it."  *Colorado River Water*

*Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) (citations omitted).

Abstention "is appropriate 'in cases presenting a federal constitutional issue which might

be mooted or presented in a different posture by a state court determination of pertinent

state law.'"  *Id.* (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189

(1959)).  Abstention may also be appropriate when exercising jurisdiction would "be

disruptive of state efforts to establish a coherent policy with respect to a matter of

substantial public concern."  *Colorado River*, 424 U.S. at 814.

Abstention is inappropriate in this case.  There are no state court proceedings

which might be mooted by hearing this case.  Moreover, while Indiana has an important

interest in regulating the conduct of judges and attorneys, it cannot be said that the

12

importance of those policy problems "transcends the result" in this case.  *See Id*.  After

all, as explained below, this case involves rights at the core of the First Amendment.

        D.     Canon 3E(1)

       Indiana Canon of Judicial Conduct 3E(1) states, "[a] judge shall disqualify himself

or herself in a proceeding in which the judge's impartiality might reasonably be

questioned. . . ."  The Commentary to this rule states, "[u]nder this rule, a judge is

disqualified whenever the judge's impartiality might reasonably be questioned . . . A

judge should disclose on the record information that the judge believes the parties or their

lawyers might consider relevant to the question of disqualification, even if the judge

believes there is no real basis for disqualification."  According to Right to Life, "this

recusal provision cannot withstand strict scrutiny" and "falters under an as-applied

challenge," because it "penalizes judges by denying them employment, resulting in a

chilling effect on judicial candidates who seek to avoid such an unconstitutional

condition."  Plaintiff's Motion for Summary Judgment, at 1-2 ¶ 5; Plaintiff's

Memorandum in Support of Motion for Summary Judgment, at 16.  This Court disagrees.

       This Court has the benefit of reviewing several cases in federal district courts

around the country, as cited by the parties, that have reviewed similar recusal canons.

None of those cases struck down this type of canon.  *See Alaska Right to Life v. Feldman*,

380 F.Supp.2d 1080, 1084 (D. Alaska 2005) (finding the recusal clause serves a "State

interest, i.e., it offers assurance to parties that the judge will apply the law in the same

manner that would be applied to any other litigant"); *North Dakota Family Alliance, Inc.

v. Bader*, 361 F.Supp.2d 1021, 1043-44 (D.N.D. 2005) (finding the recusal clause serves

the "State interest of offering a guarantee to parties that the judge will apply the law in the same manner that would be applied to any other litigant"); *Wolnitzek*, 345 F.Supp.2d at 708.

This Court agrees with the district courts in Alaska, North Dakota and the Eastern District of Kentucky, and finds that the recusal clause is narrowly tailored to serve a compelling State interest.  It furthers the purpose of removing bias for or against a party to the proceeding and seeks to guarantee that the judge will apply the law in the same manner that would be applied to any other litigant.  *See Feldman*, 380 F.Supp.2d at 1084; *Bader*, 361 F.Supp.2d at 1043-44; *Wolnitzek*, 345 F.Supp.2d at 708.

The parties and this Court are in agreement that Canon 3E(1) furthers a compelling state interest.  Defendants' Memorandum in Support of Motion for Summary Judgment at 7; Plaintiffs' Memorandum in Support of Motion for Summary Judgment at 17.  As stated in *Bader*:

> There is no question that an impartial judge is critical to due process and the administration of justice.  A widespread belief that courts are not impartial – resulting in a loss of public faith in the legal system and an unwillingness to respect its authority – would destroy the judiciary as quickly as would an actual lack of impartiality."

*Bader*, 361 F.Supp.2d at 1043.

There is disagreement over whether the Canon is narrowly tailored to further that interest, however.  This Court, as in the cases cited above, finds that the Canon is narrowly tailored and neither overbroad nor vague.  The restriction does not apply in every instance in which a judge has expressed her views on a certain issue.  *See Wolnitzek*, 345 F.Supp.2d at 709.  Rather, it applies when the judge's *impartiality* is

reasonably at issue.  Further, recusal is not required every time a judge's impartiality is merely questioned.  Recusal is required only in those situations where questioning the judge's impartiality is objectively *reasonable*.  It also cannot be said that Canon 3E(1) prohibits "a 'substantial' amount of protected speech in relation to its many legitimate applications," a requirement to finding the restriction overbroad.  *Id*.  Finally, Canon 3E(1) is not unconstitutionally vague because, as the Eastern District of Kentucky recognizes, "a judge, in most instances, can determine those circumstances in which a statement might appear to commit him to an issue and thus require recusal from a case involving that issue."  *Id*. at 710.

Because the Court finds that Canon 3E(1) is narrowly tailored to further a compelling state interest, the Defendants' Motion for Summary Judgment as it relates to Canon 3E(1) must be granted.  Accordingly, the Plaintiffs' Motion for Summary Judgment as it relates to Canon 3E(1) must be denied.

E.      Canons 5(A)(3)(d)(i) and (ii)

Canon 5A(3)(d)(i) – the so-called "pledges and promises clause" – prohibits a judicial candidate from making pledges or promises of conduct in office "other than the faithful and impartial performance of duties of the office."  Canon 5A(3)(d)(ii) – the so-called "commitments clause" or "commits clause" – prohibits a judicial candidate from making statements that commit or appear to commit a candidate with respect to cases, controversies, or issues that are likely to come before the court.  Plaintiffs argue that Canon 5A(3)(d)(i) and (ii) is facially unconstitutional.  This Court agrees.

In *White*, the United States Supreme Court struck down Minnesota's "announce

15

clause" as unconstitutional.  536 U.S. at 788.  That clause provided that a candidate for

judicial office, including an incumbent judge, shall not announce his views on disputed

legal or political issues.  *Id*. at 769.  Applying strict scrutiny review, the Court found that

the clause was not narrowly tailored to reflect the state's interest in impartiality.  *Id*. 775.

Like the announce clause struck down in *White*, Canon 5A(3)(d)(i) and (ii)

restricts a fundamental First Amendment freedom – speech.  As the majority opinion in

*White* stated:

> [d]ebate on the qualifications of candidates is at the core of our First
> Amendment freedoms, not at the edges.  The role that elected officials play
> in our society makes it all the more imperative that they be allowed freely to
> express themselves on matters of current public importance.  It is simply not
> the function of Government to select which issues are worth discussing or
> debating during the course of a political campaign.

*Id*. at 781-82.  Therefore, strict scrutiny analysis must be applied to test the

constitutionality of these restrictions.  Under the strict-scrutiny test, Defendants have the

burden to prove that these restrictions are (1) narrowly tailored and (2) serve a compelling

state interest.  *See Id*. at 773.

Defendants argue that Canon 5A(3)(d)(i) and (ii) furthers the compelling state

interest in "openmindedness" or, stated differently, "in judges having an open mind."[7]

Defendants' Memorandum in Support of Motion for Summary Judgment at 10.

Defendants quote from *White*, which states that "[t]his quality [openmindedness] in a

judge demands, not that he have no preconceptions on legal issues, but that he be willing

_____

[7]The Court in *White* considered three understandings of "judicial impartiality": lack of
bias towards the parties, lack of preconception towards a particular legal view, and
openmindedness.  536 U.S. at 775-80.

16

to consider views that oppose his preconceptions, and remain open to persuasion, when the issues arise in a pending case.  This sort of impartiality seeks to guarantee each litigant, not an *equal* chance to win the legal points in the case, but at least *some* chance of doing so. . . . [I]mpartiality in this sense, and the appearance of it, are desirable in the judiciary. . . ."  *White*, 536 U.S. at 778 (emphasis in original).  While the parties disagree over the exact nature of the interest at stake, the Plaintiffs agree that Canon 5A(3)(d)(i) and (ii) furthers a compelling state interest.  Plaintiffs' Memorandum in Support of Summary Judgment at 4.

The real issue, however, is whether the provisions of this Canon are narrowly tailored to further that interest.  This Court finds that they are not.  For the Defendants to show that Canon 5A(3)(d)(i) and (ii) is narrowly tailored, "they must demonstrate that it does not 'unnecessarily circumscrib[e] protected expression.'"  *Id*. at 777 (quoting *Brown v. Hartlage*, 456 U.S. 45, 54 (1982)).  Canon 5A(3)(d)(i) and (ii) is not narrowly tailored to serve the interest of openmindedness because it is underinclusive.  Underinclusiveness "diminishes the credibility of the government's rationale for restricting speech." *White*, 536 U.S. at 780 (quoting *Ladue v. Gilleo*, 512 U.S. 43, 52-53 (1994)); *see also Florida Star v. B.J. F.*, 491 U.S. 524, 541-42 (1989) (Scalia, J., concurring) ("[A] law cannot be regarded as protecting an interest of the highest order, and thus as justifying a restriction upon truthful speech, when it leaves appreciable damage to that supposedly vital interest unprohibited.") (internal quotation marks and citations omitted).  In this case, Canon 5A(3)(d)(i) and (ii) only includes within its scope pledges and commitments made by judicial candidates without addressing pledges or commitments made before the lawyer or

17

judge becomes a judicial candidate.  *See White*, 536 U.S. at 779-80.  So it creates a

situation where a candidate for judicial office may not make statements that "commit or

appear to commit" that candidate on legal issues, but he may do so "up until the very day

before he declares himself a candidate."  *See Id*.at 779.

Defendants describe the interest at stake in this way: "[h]aving a judicial candidate

pledge, promise or commit to rule on a specific case in a particular way removes any

chance that some litigants will receive due process of law from an impartial arbiter."

Defendants' Memorandum in Support of Summary Judgment at 10.  That may be true

enough, but that is not the nature of Canon 5A(3)(d)(i) and (ii).  In this case, judicial

candidates are being asked, through questionnaires, to announce their views.  They are

being advised by Defendants not to answer because doing so may commit or appear to

commit the judicial candidates in violation of Canon 5A(3)(d)(i) and (ii).  In other words,

the pledges and promises clause and the commits clause "are essentially de facto

'announce clauses' which were found unconstitutional" in *White*.  *Bader*, 361 F.Supp.2d

at 1042.  As the Court stated in *Bader*, "[t]here is no real distinction between announcing

one's views on legal or political issues and making statements that commit, or 'appear to

commit,' a judicial candidate with respect to cases, controversies, and issues that are

likely to come before the court."  361 F.Supp.2d at 1041.

Furthermore, as the Plaintiffs correctly point out, a narrower construction can be

fashioned to serve the State's interest in impartiality.  For example, a pledge or promise

clause that prohibits a candidate from pledging or promising "certain results in a

particular case" is more narrowly tailored than the current Canon.  *See Buckley v. Illinois*

*Judicial Inquiry Bd.*, 997 F.2d 224, 230 (7th Cir. 1993)

Canon 5A(3)(d)(i) and (ii) is also overbroad. An overbroad law is to be invalidated if "the unconstitutional applications of a statute are substantially greater than the statute's legitimate sweep. *Commodity Trends Serv. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 688 n.4 (7th Cir. 1998) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)). "The overbreadth doctrine prevents a law from having a deterrent effect on protected speech." *Bader*, 361 F.Supp.2d at 1038. By prohibiting statements that "appear to commit the candidate with respect to cases, controversies, or issues that are likely to come before the Court," Canon 5A(3)(d)(i) and (ii) sweeps constitutionally protected speech within its scope. In so doing, it prevents candidates from stating their views on legal or political matters. That is precisely the type of restriction found in *White* to violate the First Amendment. *See White*, 536 U.S. at 788. As noted above, there is no principled distinction between the "announce clause" struck down in *White* and the "pledges and promises" and the "commitment clause" at issue here. *See Bader*, 361 F.Supp.2d at 1039.

Moreover, the scope of the Canon is not limited in any meaningful way by the fact that it applies only to issues "likely to come before the court." As the Court observed in *White*, "limiting the scope of the clause to issues likely to come before it is not much of a limitation at all" as "there is almost no legal or political issue that is unlikely to come before a judge of an American court, state or federal, of general jurisdiction." *White*, 536 U.S. at 772 (citations omitted).

Canon 5A(3)(d)(i) and (ii) is also unconstitutionally vague. A law "must have a

'reasonable degree of clarity' such that anyone of ordinary intelligence can grasp its import." *Weinberg v. City of Chicago*, 310 F.3d 1029, 1042 (7th Cir. 2002) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 629 (1984)).  A law is vague if it "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis." *Grayned v. City of Rockford*, 408 U.S. 104, 108-109 (1972).  As the Advisory Opinion demonstrates, Canon 5A(3)(d)(i) and (ii) is unclear.  The Advisory Opinion recognizes that, in all but a few narrow situations, application of the Canon will require ad hoc analysis and advice from the Commission each time there is a question about the permissibility of a candidate's statement.  Because judicial candidates cannot be expected to ascertain the meaning of Canon 5A(3)(d)(i) and (ii), that Canon lacks the "reasonable degree of clarity" required by the Constitution and impermissibly delegates questions about free speech to the Commission on an ad hoc and subjective basis.

Finally, it is worth restating that nothing in this Court's order should be read to compel, or even encourage, judges or judicial candidates to answer questions put to them by these plaintiffs or any other group.  This Court comes to its decision without regard to the political or social agendas of the Plaintiffs in this matter.  While this Court appreciates both the difficulty and the importance of the task charged to the Defendants in this case, it also appreciates a very basic reality – that judges come to the bench with a diverse range of well-formed opinions and predispositions on a host of social and political issues.  And yet the overwhelming majority of them fairly and competently discharge their judicial duties.  In the rare event that they do not, the democratic process – not ad hoc analysis by

a state commission – provides the proper remedy.

V.   Conclusion

For the foregoing reasons, the Plaintiffs' Motion for Summary Judgment is **GRANTED** with respect to Canon 5A(3)(d)(i) and (ii) and **DENIED** with respect to Canon 3E(1).  The Defendant's Motion for Summary Judgment is **GRANTED** with respect to Canon 3E(1) and **DENIED** with respect to Canon 5A(3)(d)(i) and (ii).

Accordingly, Defendants are enjoined and prohibited from enforcing Ind. Code of Judicial Conduct, Canon 5A(3)(d)(i) and (ii).

Each party shall bear its own costs and fees.

**IT IS SO ORDERED.**

**Date: November 14, 2006**                     **s/ Allen Sharp**
                                                            **ALLEN SHARP, JUDGE**
                                                            **UNITED STATES DISTRICT COURT**